UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DANIEL EDWARD LOPEZ,              )
                                 )
          Petitioner,            )
                                 )        Nos.  3:12-CR-18-PLR-HBG
v.                               )              3:14-cv-54
                                 )
UNITED STATES OF AMERICA,        )
                                 )
          Respondent.            )

## REPORT AND RECOMMENDATION

This case has been referred [Doc. 55][1] to undersigned for a report and recommendation regarding disposition by the District Court.  An evidentiary hearing was held before the Court on March 29, 2016 on Petitioner's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 41].  Assistant United States Attorney Kelly A. Norris appeared on behalf of the Government.  Attorney James Varner appeared on behalf of the Defendant, who was also present.  The Court heard the testimony of the Defendant and his former attorney Assistant Federal Defender Jonathan A. Moffatt, received exhibits, and heard the parties' arguments.   For the reasons set forth herein, the Court **RECOMMENDS** that Petitioner's motion be **DENIED**.

## I.      BACKGROUND

On February 7, 2012, a grand jury returned an Indictment [Doc. 7], charging the Defendant with two counts of bank robbery and two counts of using, carrying, and/or brandishing a firearm in relation to a crime of violence.  Following extensive litigation of the Petitioner's motions to suppress evidence, the Petitioner entered guilty pleas to both counts of

---

[1] All citations to the record are found on the docket of Case No. 3:12-CR-18-PLR-HBG.

bank robbery and a single count of using, carrying, and/or brandishing a firearm in relation to a crime of violence. Petitioner's plea was pursuant to a Plea Agreement [Doc. 30] with the Government. On February 5, 2013, District Judge Thomas W. Phillips sentenced Petitioner to 240 months of imprisonment, followed by five years of supervised release. Judge Phillips entered the judgment of conviction [Doc. 38] the following day. Assistant Federal Defender Jonathan A. Moffatt represented Petitioner at all times, up to and including entry of judgment.

On February 7, 2014, the Petitioner filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 41], raising two claims: (1) that his attorney was ineffective for not contesting the sufficiency of the factual basis set forth in the plea agreement, and (2) that his attorney gave constitutionally ineffective assistance by not filing a direct appeal as Petitioner had requested. On February 1, 2016, District Judge Pamela L. Reeves ruled [Doc. 54] that the Defendant was entitled to an evidentiary hearing on the sole issue of whether Petitioner timely requested that his attorney file a direct appeal on his behalf. Judge Reeves denied the Petitioner's motion in all other respects. Accordingly, the undersigned held an evidentiary hearing on March 29, 2016.

## II.     POSITIONS OF THE PARTIES

Petitioner argues that he is entitled to relief pursuant to 28 U.S.C. § 2255 because Mr. Moffatt failed to file a direct appeal on his behalf. [Docs. 41 & 45]. In support of this claim, Petitioner filed an affidavit [Doc. 46], stating:

> Immediately after the district court imposed sentence, I specifically asked counsel to file an appeal because I was dissatisfied with my plea, sentence, and the resolution of my Fourth Amendment claim. Furthermore, I asked counsel to appeal the suppression issue even before I was sentenced.

2

Petitioner contends that because Mr. Moffatt failed to file a notice of direct appeal, despite his request that counsel do so, he received the ineffective assistance of counsel.

The Government argues [Doc. 44] that Mr. Moffatt did not give the ineffective assistance of counsel by not filing a direct appeal. The Government concedes that a defendant is typically entitled to a delayed direct appeal, regardless of the appeal's merit, when defense counsel is instructed, but fails, to file an appeal. [Doc. 44, pp.5-6]. Nonetheless, the Government argues that Petitioner cannot establish that Mr. Moffatt's representation was deficient because the Petitioner's contention that he asked counsel to file an appeal is contradicted by counsel's sworn statement that the Petitioner did not ask him to file an appeal during the time available to do so. The Government presents the affidavit [Doc. 44-1] of Mr. Moffatt, in which counsel states

> [t]o the best of my knowledge, based on a review of my records, Mr. Lopez never asked me to file an appeal on his behalf within the time period for doing so. I would have filed a notice of appeal if Mr. Lopez had unequivocally directed me to do so.

The Government also argues that the Petitioner expressly waived his right to a direct appeal in the Plea Agreement and at the change of plea hearing. It asserts that the existence of this appeal waiver supports a finding that the Petitioner did not ask counsel to file an appeal. Additionally, had counsel filed a notice of appeal, the Government would have moved to dismiss the appeal, and the Sixth Circuit Court of Appeals would have likely granted the dismissal due to the appellate-waiver provision contained in the Plea Agreement.

### III.    SUMMARY OF THE TESTIMONY

At the March 29, 2016 evidentiary hearing, Petitioner testified that he was represented by Assistant Federal Defender Jonathan Moffatt in his criminal case. He said that Mr. Moffatt visited him at the jail three or four times during the pendency of his case. Petitioner stated that

he and Mr. Moffatt discussed filing a motion to suppress. He said that Mr. Moffatt told him that if the judge ruled against him on the suppression motion, he could "go to the next step." According to the Petitioner, after the suppression motion was filed, Mr. Moffatt told him that he thought the Petitioner had a "good shot at winning" but that, if he did not win, he could take the issue to another judge. The Petitioner stated that following a hearing on the suppression motion, Judge Guyton "ruled against" him in a report and recommendation. He said that a few days after the report and recommendation was filed, he and Mr. Moffatt discussed the report and recommendation and that Mr. Moffatt said that the Defendant had a "good shot at winning on the search of the garage on appeal." The Defendant said he told Mr. Moffatt, "Let's do that."

The Petitioner stated after his meeting with Mr. Moffatt on the report and recommendation, he signed a plea agreement that contained a waiver of appeal. Petitioner said he asked Mr. Moffatt if the search of garage issue was affected by the plea agreement, and Mr. Moffatt said, "No." The Petitioner stated that when he signed the plea agreement, he was under the assumption that he was "appealing [his] case" and that he never would have signed the plea agreement, if he had thought that he could not appeal.

The Petitioner stated that at his change of plea hearing before Judge Phillips, he did not hear anything that made him think that he could not appeal. He said that Judge Phillips informed him that he was giving up his right to a direct appeal, except with regard to ineffective assistance of counsel or a "change of law." The Petitioner stated that he thought the "change of law" exception to the appellate waiver meant that he could appeal.

The Petitioner testified that he never told Mr. Moffatt that he wanted to abandon his appeal. He said that forty-five days after his sentencing hearing, he received a letter from Mr. Moffatt, stating that, as previously discussed, they were not appealing. The Petitioner said this

was the opposite of what he and Mr. Moffatt had discussed, which was that they were appealing. He said he wrote to Mr. Moffatt asking for his discovery and other paperwork. He stated that after receiving the letter from Mr. Moffatt, he thought that Mr. Moffatt was working against him the whole time.

On cross-examination, the Petitioner agreed that he recognized his signature on the Plea Agreement in this case, which was made an exhibit [Exh. 1] to the evidentiary hearing. He said that Mr. Moffatt went over the Plea Agreement with him before he signed it. He said he felt like he understood the Plea Agreement. He recalled Mr. Moffatt going over the appellate waiver in paragraph 10(a) with him. He said that he thought that meant that he could not appeal anything that occurred from the time he signed the Plea Agreement forward.

The Petitioner said that when Mr. Moffatt brought the report and recommendation to him and recommended that he "appeal," he told Mr. Moffatt, "Let's do that." He stated that when Mr. Moffatt brought him the Plea Agreement, he asked Mr. Moffatt if it affected his search issue. The Petitioner said he thought his appeal was "going through" up "until the day [he] got sentenced." The Petitioner stated that he was sentenced to the amount of time to which he agreed. He said that, after the sentencing hearing, he met with Mr. Moffatt in the room by the holding cells. He said he told Mr. Moffatt, "Twenty years is a long time. Is there anything else we could do besides what we are already doing?" The Petitioner said that Mr. Moffatt told him there was nothing he could do but "wait for a change of law." The Petitioner said he did not discuss appealing with Mr. Moffatt at that time because he assumed his appeal "was going through anyway."

The Defendant acknowledged that he had previously entered into a plea agreement with an appellate waiver in the District of New Hampshire. He identified a copy of a March 19, 2013

letter, which he had received from Mr. Moffatt following his sentencing hearing, and it was made an exhibit [Exh. 3] to the hearing. He agreed that in the letter, Mr. Moffatt asked the Petitioner to contact him if he needed assistance. He said that he did contact Mr. Moffatt after that to request documents from his file but that he did not mention anything about an appeal at that time. The Petitioner said he did not think that the law had to change in order for him to get a different result but that a change in ruling by a different judge was required. He said he believed that the judge "lays down the law" in his case.

The Petitioner testified that he never would have signed the Plea Agreement if he had known that his appeal was not being pursued. He said the last time he told Mr. Moffatt that he wanted to appeal was right before he signed his plea agreement. He said he twice indicated to Mr. Moffatt that he wanted to file an appeal, once after he signed the Plea Agreement and again after his sentencing hearing. He agreed that he did not "directly" ask to appeal. Petitioner said that, instead, he asked Mr. Moffatt, "Is there anything else we can do?"

The Government called Jonathan Moffatt, who testified that he is an Assistant Federal Defender with the Federal Defender Services of Eastern Tennessee. He said he represented Daniel Lopez on two bank robbery charges and two counts of possession of a firearm in furtherance of a felony. He stated that he met with the Petitioner to discuss the discovery and filed both a general motion to suppress evidence seized in the searches of the Petitioner's apartment and vehicle and a second motion to suppress a firearm that was found in the Petitioner's father's garage. He said that following a hearing before the magistrate judge, the Petitioner lost on both motions. Mr. Moffatt said he brought a copy of the report and recommendation to the jail and met with the Petitioner to discuss his options. Mr. Moffatt said that he typically files objections to an unfavorable report and recommendation, so that the issues

are addressed by the District Judge. He said he did not file objections in this case. He stated that he discussed with the Petitioner his opinion that the general suppression motion would likely not be successful on appeal. However, he told Lopez that he believed the motion relating to the search of the garage was a strong motion, based on the case law, and that it had a chance of success. He said he discussed Judge Phillips making a ruling on the motions, but the Petitioner wanted to get the case over with, if he could get a favorable plea. Mr. Moffatt said that the Petitioner made the decision not to file objections, after Mr. Moffatt's discussion with him.

Mr. Moffatt testified that after this meeting with the Petitioner on the report and recommendation, he entered into plea negotiations. He said he discussed possible plea options with the Petitioner. Mr. Moffatt said he filed a motion to extend the deadline for filing objections to the report and recommendation in order to leave that option open. He said the Petitioner received a plea offer for an 11(c)(1)(C) agreement of twenty years, which would dismiss one of the firearms charges. He said that the Petitioner was facing a seven (7)-year sentence on the first firearm charge and a twenty-five (25)-year sentence on the second firearm charge for a total of thirty-two (32) years, in addition to a four-or-five-year sentence for each of the two bank robberies. He said he reviewed each paragraph of the plea agreement with the Petitioner, as he does with every client in order to be sure that the client understands.

On cross-examination, Mr. Moffatt stated that he would have reviewed the appellate waiver in the Plea Agreement with the Petitioner. He said that the right to a direct appeal is the primary right that an individual gives up in a plea agreement and that giving up the right to appeal is a weighty decision. Mr. Moffatt said he tries to impress this on each of his clients and would have done so with the Petitioner. He said that he would have made clear to the Petitioner that the Petitioner had the option of pursuing his suppression motions or he had the option of

signing the plea agreement, which meant no longer pursuing the suppression motions. He said he discussed this with the Petitioner at the time for filing objections to the report and recommendation. He stated that the Petitioner understood that he was making the decision not to appeal and that if no objections were filed, that was the end of the motions to suppress. Mr. Moffatt said that at the time of that discussion, the Petitioner's demeanor was such that he wanted the case to be concluded. He did not recall the Petitioner expressing dissatisfaction with the plea deal.

Mr. Moffatt testified that he typically meets with his clients both before and after the sentencing hearing. He said that before the sentencing hearing, he wants to make sure that no additional issues have arisen and that after the sentencing hearing, he wants to review what just occurred and to find out if the client wants to appeal. He said that he discusses with a client whether he or she wants to appeal even if the client has an 11(c)(1)(C) agreement. Mr. Moffatt said that he then memorializes that discussion regarding an appeal in a letter to the client when he receives a copy of the judgment a few days later. He stated that it is the policy of the FDS to memorialize the decision of whether to appeal or not to make sure that the record is clear. He said that he composes this letter after the sentencing hearing and that, if he uses another letter as a "go-by," he makes sure to tailor that letter to the client to whom he is sending it.

Mr. Moffatt said that the Petitioner's sentencing hearing was on February 5, 2013. He stated that he met with the Petitioner both before and after the sentencing hearing. He said the Petitioner was prepared for what his sentence would be because it was an 11(c)(1)(C) agreement. Mr. Moffatt said that after the sentencing hearing, he discussed with the Petitioner what had occurred and that there would be no appeal. He said that the Petitioner did not express concern over anything about his case, either before or after his sentencing hearing. Mr. Moffatt said that

after he discussed the possibility of an appeal with the Petitioner, he memorialized that discussion in a letter. He did not remember the Petitioner being upset or shocked. He stated that the Petitioner never told him to file an appeal.

Mr. Moffatt identified the original follow-up letter to the Petitioner, and it was made an exhibit [Exh. 4] to the hearing. The letter is dated February 13, 2013, which was eight days after the sentencing hearing. He said that he personally drafted the letter based upon his February 5, 2013, discussion with the Petitioner and sent it to the Petitioner at the Irwin County Detention Center in Ocilla, Georgia. He said the original letter was returned by the Detention Center. Upon reviewing Exhibit 3 (the March 19 letter from Mr. Moffatt to the Petitioner), Mr. Moffatt said he believed that the FDS staff marked through the date and the Petitioner's address and re-sent the letter to the Petitioner at FCI Edgefield. Mr. Moffatt agreed that the sentence "My understanding is that you do not wish to file for [an appeal]" was an accurate reflection of his discussion with the Petitioner after the sentencing hearing.

Mr. Moffatt testified that the Petitioner subsequently contacted him and requested part of his file. Mr. Moffatt said at that time, the Petitioner did not ask to file an appeal or express dissatisfaction with the fact that no appeal had been filed. Mr. Moffatt stated "I am 100% sure that [the Petitioner] never asked to appeal. If directed to file an appeal, that is what I do. Here, I was not instructed to file an appeal."

On cross-examination, Mr. Moffatt stated that he advised the Petitioner that the suppression motion relating to the search of Petitioner's father's garage raised a strong issue. After receiving an adverse ruling from the magistrate judge, Mr. Moffatt thought appeal of this motion would be a "strong avenue" to take. Initially, the Petitioner wanted to proceed with appealing this issue but changed his mind after the report and recommendation was filed. The

Petitioner's plea agreement states that he is waiving the right to appeal his conviction or sentence. Mr. Moffatt agreed that an "uninitiated person" might think that an appeal waiver as to a conviction or sentence did not include an issue relating to the suppression of evidence.

Mr. Moffatt testified that after his sentencing hearing, he and the Petitioner did not discuss his suppression motion. He said that while no one would be satisfied with a twenty-year sentence, he did not recall the Petitioner indicating dissatisfaction with his sentence. With regard to his conversation with the Petitioner after the sentencing hearing, he stated that he did not recall the Petitioner asking if anything else could be done about his sentence or discussing appealing the suppression issue. Mr. Moffat said that if the Petitioner had asked if anything more could be done about his sentence, he would not have thought the question related to an appeal of the suppression issue.

Mr. Moffatt stated that a notice of appeal in the Petitioner's case should have been filed by February 19. Mr. Moffatt said that he always leaves an opening for his clients to contact him in the letter he sends after the entry of judgment. He agreed that the Petitioner did not receive the letter, stating Mr. Moffatt was not filing an appeal in his case, until after February 19, because the letter was returned to Mr. Moffatt. The letter was resent on March 19, 2013. Mr. Moffatt agreed that if the Petitioner had called him at that time, it would not have made a difference, because the time for filing an appeal had expired.

On redirect examination, Mr. Moffatt testified that he explained the plea agreement to the Petitioner, including the fact that in an 11(c)(1)(C) plea agreement, the Government agrees to a specific sentence. Mr. Moffatt stated that an 11(c)(1)(C) is never a conditional plea. He said he explained to the Petitioner that with the 11(c)(1)(C) plea agreement, he had the option to accept a twenty-year sentence, but he would not get to appeal the suppression issue. Mr. Moffatt said that

although he did not recall the specific discussion, he would have advised the Petitioner of the repercussions of an 11(c)(1)(C) plea agreement.

Mr. Moffatt acknowledged that the appeal waiver in the plea agreement does not discuss what happens if there is a change in the law. He said he did not recall discussing with the Petitioner what would happen if the law changed. He said that he does discuss with his clients that a change in the law is a ground for filing a motion pursuant to section 2255, but this is a different issue than whether a defendant can bring a direct appeal. He said he did not recall the Petitioner asking about a change in the law. Mr. Moffatt reiterated that the Petitioner never asked him to file a notice of appeal and that, once the Petitioner decided to forego an appeal in favor of a 11(c)(1)(C) plea agreement, he never expressed a desire to appeal.

## IV.    ANALYSIS

In pertinent part, Section 2255(a) of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution." In order to obtain relief for an alleged constitutional error, the record must reflect a constitutional error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)). The burden is on the petitioner to establish the claims arising out of the petition. Bowers v. Battles, 568 F.2d 1, 5 (6th Cir. 1977).

When the alleged constitutional error is ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1987). Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). That is, the petitioner must: (1) establish, by

identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," Strickland, 466 U.S. at 687, as measured by "prevailing professional norms," Rompilla v. Beard, 545 U.S. 374, 380 (2005); and (2) demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

The Government argues that Petitioner did not ask his attorney to file a notice of appeal. Moreover, it avers that he explicitly waived his right to appeal when he entered a guilty plea. [Doc. 44 at 6-7]. In support of its argument, the Government cites to the affidavit of Mr. Moffatt and the signed Plea Agreement that states:

> In consideration of the concessions made by the United States in this agreement and as a further demonstration of [petitioner's] acceptance of responsibility for the offense(s) committed, the [petitioner] agrees not to file a direct appeal of [his] conviction(s) or sentence.

[Exh. 1, ¶10(a)]. The Government further argues that if an appeal had been filed, the United States would have filed a motion to dismiss based on the appellate-waiver provision, and such a motion would likely have been granted. [Doc. 44 at 7] (citing United States v. Sharp, 442 F.3d 946, 949-52 (6th Cir. 2006) (dismissing an appeal where the defendant had waived the right to appeal when he pleaded guilty)).

The Court finds that the "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998). This is true even when a defendant signs a plea agreement that contains an appellate-waiver provision. See Campbell v. United States, 686 F.3d 353, 359 (6th Cir. 2012) ("'[R]egardless of the merits of [the defendant's] substantive claims,' he would be entitled to relief under § 2255 if the district court on remand determined that there was 'an actual

request for an appeal'") (quoting <u>Wright v. United States</u>, 320 F. App'x 421, 426 (6th Cir. Apr. 8, 2009)).  However, a defendant's actual "request" is still a critical element in the Sixth Amendment analysis.  <u>See</u> <u>Regalado v. United States</u>, 334 F.3d 520, 524-526 (6th Cir. 2003) (finding that a failure to file an appeal is not ineffective assistance of counsel where the attorney was not specifically instructed to do so).

In this case, the Court finds that Petitioner failed to prove by a preponderance of the evidence that he asked Attorney Moffatt to file a direct appeal on his behalf.  First, the Court observes that Lopez stated in his affidavit [Doc. 46] that right after the sentencing hearing, he "specifically asked counsel to file an appeal because [he] was dissatisfied with [his] plea, sentence, and the resolution of his Fourth Amendment claim."  However, the Petitioner's own testimony at the evidentiary hearing contradicts this statement.  At the evidentiary hearing, the Petitioner admitted that, following the sentencing hearing, he did not expressly ask Mr. Moffatt to file a notice of appeal but, instead, assumed that an appeal was in progress.  He claims that his assumption should have been apparent because he asked counsel if anything *else* could be done about his twenty-year sentence besides "what we are already doing."

Setting aside for a moment the question of whether counsel's failure to divine Petitioner Lopez's assumption constitutes the ineffective assistance of counsel, the Court finds that the Petitioner did not ask or imply that he wanted counsel to file a direct appeal.  The Court credits the testimony of Mr. Moffatt that, after the sentencing hearing, he discussed with Lopez that there would be no appeal.  Mr. Moffatt testified that he always discusses whether an appeal will be taken with his client after the sentencing hearing, even in situations where the client has waived the right to appeal.  Here, the Petitioner confirmed that this meeting occurred in the holding area after the sentencing hearing.  Mr. Moffatt testified that following this meeting with

13

his client, he documents their discussion in a letter to the client, which he drafts when he receives a copy of the judgment. Mr. Moffatt testified that he met with the instant Petitioner following the sentencing hearing and that he was one-hundred percent sure that the Petitioner did not ask to appeal. He then documented this conversation with the Petitioner in a letter dated February 13, 2016. A copy of this letter [Exh. 3] was placed into evidence, and it confirms both that Mr. Moffatt and Lopez discussed the issue of a direct appeal after the sentencing hearing and that Lopez did not want to file a direct appeal. Finally, the Court observes that Mr. Moffatt's testimony that the Petitioner did not ask him to file a direct appeal is supported by the fact that the Petitioner later contacted counsel to request documents and did not ask about an appeal or comment on the letter.

The Petitioner also argues that, even if he did not ask Mr. Moffatt to file a direct appeal after the sentencing hearing, he asked him to appeal the denial of his suppression motion before the Petitioner signed a plea agreement. The Petitioner contends that nothing happened following that request to appeal that caused him to realize there would be no appeal. This argument fails because, as discussed above, a defendant must specifically instruct counsel to file a direct appeal, in order for the failure to do so to constitute the ineffective assistance of counsel. Regalado, 334 F.3d at 524-526. Here, the Petitioner may have initially wanted to pursue his suppression motion, but he changed his mind, told counsel that he wanted the case to be over, and asked him to pursue plea negotiations instead. Mr. Moffatt testified that he explained, and the Petitioner understood, that if the Petitioner entered into the plea agreement, he was foregoing his opportunity to pursue his suppression issue. Mr. Moffatt's testimony is supported by the fact that he did not file objections to the report and recommendation.

Moreover, Mr. Moffatt reviewed the appeal waiver in the plea agreement with the Petitioner, and Judge Phillips again reviewed the fact that the Petitioner was giving up his right to appeal at the change of plea hearing. The Court finds that the Petitioner, who had entered a guilty plea with an appeal waiver in a prior case, did not believe that an appeal of his suppression issue was ongoing in the face of his attorney and the District Judge telling him that it was not.

Based upon the foregoing, the Court finds that Petitioner has failed to show by a preponderance of the evidence that he asked Attorney Moffatt to file an appeal. Accordingly, because Mr. Moffatt never received an express instruction to file an appeal, nor could he have reasonably surmised that Petitioner wanted to appeal, Petitioner's ineffective assistance of counsel claim fails the first prong of the <u>Strickland</u> test.

## V.     CERTIFICATE OF APPEALABILITY

The District Judge has also directed [Doc. 54, p.7] the undersigned to make a recommendation regarding whether the Court should issue a certificate of appealability with regard to all issues raised by the Petitioner in his § 2255 motion. Pursuant to 18 U.S.C. § 2253(c)(1)(B), an appeal of the final order in a proceeding under § 2255 may not be taken to the appellate court unless a certificate of appealability is issued. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 18 U.S.C. § 2253(c)(2).

In the instant case, Petitioner has raised two issues in his motion: (1) that Mr. Moffatt was ineffective for failing to contest the sufficiency of the factual basis in the Plea Agreement, and (2) that he received ineffective assistance of counsel because Mr. Moffatt did not file a direct appeal despite Petitioner asking counsel to do so.

As to Petitioner's first claim, District Judge Reeves determined that it was meritless because the Petitioner adopted the factual basis in his Plea Agreement by signing it, stated under oath before Judge Phillips that the facts set out in the Plea Agreement are true, gave a sworn admission in open court that he was guilty of the charged offenses, and stipulated in the Plea Agreement that the institutions he robbed were federally insured. With regard to the Petitioner's second claim, the Court has determined that the Petitioner did not ask his attorney to file a direct appeal, nor is there a basis for finding that counsel should have anticipated or understood that Petitioner wanted to file an appeal. With regard to both of these claims, Petitioner has failed to show that Attorney Moffatt's representation was deficient. Therefore, Petitioner has failed to make a substantial showing that he has been denied a constitutional right.

The Court finds that the Petitioner has failed to make a substantial showing of a denial of a constitutional right for the two claims he raises in his § 2255 motion. Accordingly, the Court recommends that the District Judge deny a certificate of appealability in this case.

## VI. CONCLUSION

For the reasons expressed herein, the Court **RECOMMENDS**[2] that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 41**] be **DENIED**

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

and that no certificate of appealability be issued with regard to any of the Petitioner's claims in

his § 2255 motion [**Doc. 41**] or his reply [**Doc.46**].

Respectfully submitted,

United States Magistrate Judge