| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:12-CR-018 |
| ) | |
| DANIEL EDWARD LOPEZ ) | |

## MEMORANDUM AND ORDER

This criminal case is before the Court on the defendant's *pro se* "Substitute Motion for Previously Filed Compassionate Release Motion." [Doc. 123].[1] The defendant's substitute motion has been supplemented by counsel. [Doc. 124]. The United States has responded in opposition, and the defendant has submitted a *pro se* reply. [Docs. 126, 127]. For the reasons that follow, the defendant's substitute motion will be denied.

### I. BACKGROUND

In 2012, the defendant pled guilty to two counts of armed bank robbery and one count of carrying, using, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). [Doc. 30]. Pursuant to the terms of the parties' plea agreement, the United States agreed to dismiss a second count charging the carry, use, and brandishing of a firearm during and in relation to a crime of violence. [*Id.*].

---

[1] The defendant previously filed, on January 24, 2022, a *pro se* "Emergency Motion for Compassionate Release Pursuant to 18 USC 3582(c)(1)(A)(i)," as supplemented. [Docs. 114, 115, 117]. The defendant's substitute motion makes clear that it is "to be substituted for previously filed compassionate release motion." [Doc. 123, p. 1]. His original motion [doc. 114] is therefore moot.

In 2013, the Honorable Thomas W. Phillips imposed the parties' agreed-upon net sentence of 240 months' imprisonment. [Doc. 38]. The defendant is serving that sentence at FCI Milan with a projected release date of March 15, 2029. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 16, 2022).

The defendant now moves for compassionate release in light of the COVID-19 pandemic, obesity, hypertension, herniated discs, chronic pain, symptoms of sleep apnea, a history of smoking and substance abuse, his age (50), and his rehabilitative efforts. The defendant also argues that the 240-month sentence he negotiated was and is overly harsh, resulting in unwarranted sentence disparity.[2]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

---

[2] Arguments are also presented relating to the defendant's conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). It is unclear whether this defendant has fully exhausted his administrative remedies on that claim, and he is not incarcerated in this judicial district. This issue will not be discussed further herein.

> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his or her behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

A. **Exhaustion**

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days passed between the warden's receipt of that request and the filing of the defendant's substitute motion. [Doc. 123]. The Court thus finds that it has authority under § 3582(c)(1)(A) to address the issue of compassionate release in this case. *See Alam*, 960 F.3d at 834.

B. **Merits**

The defendant's compassionate release from prison would be inconsistent with the 18 U.S.C. § 3553(a) factors. For that reason alone, his motion will be denied. *See Elias*, 984 F.3d at 519.

> Pursuant to section 3553(a),
>
> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .
>
> (5) any pertinent policy statement—
>
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>
>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As noted above, as "extraordinary and compelling" grounds for compassionate release the defendant discusses the COVID-19 pandemic, obesity, hypertension, herniated discs, chronic pain, symptoms of sleep apnea, a history of smoking and substance abuse, his age (50), and his rehabilitative efforts. He also argues that the 240-month sentence he negotiated is overly harsh—particularly in light of subsequent changes in the law. While

5

largely presented by the defendant to show "extraordinary and compelling" reasons for his release, these issues are similarly relevant to the Court's consideration of the 3553(a) factors.

The Court will begin with the defendant's rehabilitative efforts, which are a pertinent part of his history and characteristics. *See generally Pepper v. United States*, 562 U.S. 476 (2011). The United States acknowledges that the defendant's conduct within the prion setting has been, at least in most respects, "truly impressive." [Doc. 126, p. 6].

The defendant has completed thousands of hours of educational and vocational programming. [Doc. 123]. Of particular note, he has completed hundreds of hours of coursework in the culinary arts, and thousands of hours of quality control training. He has obtained a paralegal certificate. Several letters of reference have been submitted on the defendant's behalf, and it appears that has also participated in suicide companion training. On all of these points, he is commended.

Conversely, the defendant incurred two disciplinary sanctions within the past two years. [Doc. 126, Ex. 2]. However, the Court views those infractions as minor, and they have been adequately addressed by the BOP.

Far more troubling, the defendant has declined participation in the BOP's highly beneficial Residential Drug Abuse Program ("RDAP"), although he has completed a much shorter nonresidential program. [Doc. 126, Ex. 4]. The defendant has a longstanding history of substance abuse dating back to age eight. [Presentence Investigation Report ("PSR"), ¶ 72]. His mental health issues have been tied to his substance abuse. [*Id.*]. Further, the defendant admittedly committed his <u>most recent</u> pair of bank robberies

"because he needed money to support his drug addiction." [*Id.*, ¶ 20].

In his August 8, 2022, reply brief, the defendant offers two excuses for his disinterest in RDAP. [Doc. 127]. First, he alleges that "here at FCI Milan specifically, there are more active drug users in this program (per capita) than in any other unit on the compound." That unverified (and assuredly unverifiable) contention, however, is irrelevant to *this defendant's* need for RDAP. Next, the defendant claims that "[j]ust a few weeks ago, the officer's golf cart was discovered to have a quarter pound of methamphetamine, several ounces of marijuana, four cell phones, and tobacco." This statement, too, is unverified but, more importantly, an alleged incident occurring "just a few weeks" prior to August 2022 in no way explains the defendant's disinterest in RDAP which was noted at least as early as December 15, 2021. [Doc. 126, Ex. 4].

The defendant also cites a BOP worksheet stating that he has "no need" for "Drug Program." [Doc. 123]. As should be clear already, and as will be made more clear in the Court's discussion of the defendant's criminal history, this is a rating with which the Court strongly disagrees.

Having considered all of the above aspects of the defendant's post-sentencing conduct, the Court concludes that the issue of rehabilitation weighs very slightly in favor of compassionate release. The Court stresses that its discussion of RDAP should not be construed as an intent to lengthen this defendant's imprisonment to promote rehabilitation, in contravention of *Tapia v. United States*, 564 U.S. 319 (2011). Instead, the Court's consideration of this defendant's willingness to participate in RDAP is but one of many factors taken into account in evaluating this defendant's history and characteristics,

7

Case 3:12-cr-00018-RLJ-JEM   Document 128   Filed 08/22/22   Page 7 of 13   PageID #: 1566

consistent with § 3353(a) and *Pepper*.

The Court next considers the defendant's arguments pertaining to his physical health. The available medical record shows that he is obese and has been diagnosed with (and receives medication for) hypertension. [Doc. 123]. Symptoms of sleep apnea have been noted. [*Id.*]. It appears that the defendant was initially vaccinated against COVID-19 but has not been provided a booster shot. [Doc. 127].

Obesity, substance abuse disorders, and a history of smoking are conditions which "can make you more likely to get very sick from COVID-19." *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 16, 2022). The same is "possibly" true of hypertension. *Id.* The risk of severe illness from COVID-19 increases with age, and "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases." *Id.*

At the defendant's correctional institution, there are currently three inmates and no staff positive for COVID-19, with 253 inmates and 87 staff having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 16, 2022). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on constant alert in terms of COVID diagnoses, variants, infections, hospitalizations, and deaths.

The BOP categorizes the defendant's physical health as Care Level 2. [Doc. 126, Ex. 4]. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly

8

scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Aug. 16, 2022).

The available medical record in this case does not document that this defendant's health conditions are causing serious problems at this time. Nonetheless, and notwithstanding the BOP's Care Level 2 classification, the Court finds that the issue of the defendant's physical health weighs slightly in favor of compassionate release, primarily because the BOP has apparently not provided him with a COVID-19 booster shot.

The Court next recognizes the defendant's argument that his negotiated 240-month prison term is overly harsh. To the extent that the defendant feels his sentence was unfair from its inception, that is an issue he should have raised on appeal.

The Court does recognize a change in the law since the defendant's sentencing date. *Cf. Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022) (Holding, in the context of the First Step Act, that courts may "consider intervening changes of law" when deciding whether to reduce a movant's sentence.). As noted above, in addition to two counts of bank robbery, the defendant was charged with two counts of carrying, using, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). The parties entered into a plea agreement by which the defendant pled guilty to both bank robbery charges but only one § 924(c) charge. Judge Phillips imposed the parties' negotiated net sentence of 240 months.

For the bank robbery counts, the defendant's advisory guideline range was 70 to 87 months, based on a total offense level of 25 and a criminal history category of III. [PSR, ¶¶ 42, 60, 78]. Adding the mandatory 84-month consecutive sentence for the first § 924(c) charge, the effective guideline range became 154 to 171 months. [*Id.*, ¶ 78]. Obviously, the defendant's negotiated 240-month sentence fell outside and above that range.[4] Had the defendant been convicted of the second § 924(c) count, the mandatory 25-year sentence for that charge under then-current law would have raised the effective guideline range to 454 to 471 months, with a net mandatory minimum of 384 months. [*Id.*, ¶ 80].[5]

The defendant correctly points out that he would face a lesser sentencing exposure if sentenced today under current law. [Doc. 127, p. 3-4]. As to the charges to which he pled guilty, the defendant correctly acknowledges that his effective guideline range would remain the same. He also correctly points out, however, that under current law he could have pled guilty to both § 924(c) charges and his effective guideline range would have been less than his negotiated 240-month sentence.[6]

---

[4] The Court notes the defendant's reliance on a clerical error in the Statement of Reasons form that accompanied his judgment. On page two of that document, a box is checked which states that the "sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart." The defendant attempts to transform this obvious clerical error into a sign that Judge Phillips did not think an above-guideline sentence was warranted. That argument ignores the fact that Judge Phillips approved and imposed the parties' negotiated above-guideline sentence.

[5] It bears noting that in the defendant's plea agreement he admitted to having committed the second § 924(c) violation. [Doc. 30, p. 3].

[6] Had he pled to both § 924(c) counts, the defendant is correct that his total offense level for the bank robberies would have dropped by five because guideline 2B3.1(b)(2)(C) would no longer have applied. *See* U.S.S.G. § 2K2.4 cmt. n. 4. Under this scenario, his advisory guideline range for the bank robberies would be 41 to 51 months, based on a total offense level of 20 and a criminal history category of III. A mandatory minimum of 168 months would then be added to that range (84 months for each 924(c) count, per current law), resulting in an effective guideline range of 209 to 219 months.

The second 924(c) count no doubt affected the parties' plea negotiations. This Court will not speculate, however, as to what plea the United States may have offered, if any, or as to what agreement the parties might have reached, if any, under current law. Regardless, the Court has considered this statutory change in its balancing of the 3553(a) factors.

Ultimately, all of the issues discussed above are outweighed by the nature of the offenses of conviction in this case, along with (and related to) the defendant's criminal history. The PSR lists 13 paragraphs of prior convictions, ranging from driving offenses to burglary and assault, but most disturbing are the defendant's two previous bank robberies. [PSR, ¶¶ 47-59].

The prior robberies occurred in the summer of 2004, and in one of them the defendant "exposed a firearm from under his shirt, but did not point it at the teller." [*Id.*, ¶ 59].[7] For those crimes, the defendant was sentenced in the United States District Court for the District of New Hampshire to a 63-month term of imprisonment to be followed by three years of supervised release. [*Id.*]. He served his prison sentence and, after completing two years of his three-year supervised release term, was awarded early termination of supervision. [*Id.*].

The defendant then betrayed the leniency shown to him by the New Hampshire court, and he betrayed it spectacularly. Supervised release was dissolved on May 1, 2011. [*Id.*]. *Just over seven months later*, the defendant committed the first of his armed bank robberies in this district. [*Id.*, ¶¶ 11, 12]. During each robbery, the defendant "displayed a silver handgun" and walked through the lobbies ordering bank employees to comply with his

---

[7] The PSR is silent as to whether a firearm was possessed in the second prior bank robbery. [*Id.*].

11

demands. [*Id.*]. As noted, the defendant later stated that he committed the robberies "because he needed money to support his drug addiction." [*Id.*, ¶ 20].

The defendant has previously been shown leniency by the federal courts, and in retrospect that leniency was clearly unwarranted. Soon after receiving the benefit of early termination of supervision, the defendant returned to unlawful use of controlled substances and armed bank robbery. Not only did he return to robbing banks, but he also escalated his misconduct, going from merely displaying a firearm to now brandishing one.

The Court is grateful that the defendant seems to be functioning well at this time *within his institutional setting*. However, that point, along with his health concerns and recent changes to the law, are substantially outweighed by the circumstances of this case and the defendant's broader criminal history.

Again, this defendant has previously been shown leniency by the federal courts, and he betrayed that trust. This Court will not put the public at risk of that happening again.[8] The defendant's misconduct in this case was very serious, particularly when viewed in the context of his broader criminal history. Compassionate release on the facts of this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. The request for compassionate release will accordingly be denied.

---

[8] The Court recognizes, but disagrees with, the BOP's current assessment that the defendant poses a low risk of recidivism. [Doc. 123].

## III. CARES ACT

Lastly, the Court notes the defendant's alternate request for home confinement. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), provides for expanded prisoner home confinement. However, the CARES Act placed decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. *See* CARES Act, § 12003; *accord* 18 U.S.C. § 3624(c)(2). This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.

## IV. CONCLUSION

As provided herein, the defendant's substitute motion for compassionate release [doc. 123] is **DENIED**. His emergency motion for compassionate release [doc. 114] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge